Good morning, Craig Crispin on behalf of Plaintiff Valerie Hoppman, Maple Leafs Court Counsel. This case is a disability discrimination case, namely reasonable accommodation, and it has two major issues, and maybe some subsidiary ones, but first is whether there's, under the summary judgment record, whether there's an issue of fact on whether or not Ms. Hoppman had a disability. Second, was there, was a release, I call this a chicken and egg argument here, was there a need for a release before Liberty Mutual would agree to even talk about reasonable accommodation? Or, on the other side, was an interactive process appropriate to permit Ms. Hoppman and her doctor to develop the terms of the release to work? Starting with the... First, let's just start with, I'd like to know, what's your best case saying that a person who is capable of working 40 hours a week may still be considered disabled under the ADA? I think the best case is that, in today's world, salaried employees work many, many hours. What's your best court case? Precedent. Well, we would present evidence that Ms. Hoppman was, in fact, working... No, no, I'm asking about a case. Oh, which case? A case. A decided case by the court. A case, yes. A decided case, okay. Well, I think Rollins v. United Parcel Service, the Seventh Circuit case in August of last year, 2018, addressed the question... Say Second Circuit or Seventh, what did you say? Seventh Circuit. Seventh Circuit. And at the time of the briefing, we did not have a third or fourth, whatever we are now, case for this 2018. It's cited on pages 25 and 40 of our opening brief, and it's mentioned as well in the reply brief. So in the world in which we live, the ability to work 40 hours a week is not something that is going to permit a large number of people on salary to do the job. And besides... Was there any... As I understood in this case, your client, when she was working, had a 37.5 hour work week. Well, that was the nominal work week. The nominal work week. But is there any evidence that anybody was ever discharged or told that they couldn't work at another Liberty Mutual if they couldn't do more than 40 hours a week? Once Ms. Hoffman brought that in, she was placed on disability. No, she requested disability leave. Correct? Requested medical leave. Yeah. So she requested... She wasn't placed on it involuntarily. She requested it. She was placed on disability involuntarily on the short-term disability program. She requested disability, did she not? She requested medical leave. Yes. And they put her on the disability program. Under disability. Two different things. And she could have refused to be on the disability program, could she not? She could not. Well, she didn't have a choice. She got paid. She didn't have a choice. That's part of the problem. What they did was they didn't treat this as a request for accommodation or medically. They put it directly into the disability program that they had. And they had different people working on it with different goals, which was to keep her off on this short-term disability. Well, wasn't she making different representations about her ability to work? Wasn't she indicating that she was unable to work at all when she was part of that program? Dr. Harp... Yes, that... Well, sort of. There's a document submitted to the Oregon Unemployment Compensation Department, or Employment Department. And the doctor certified, checked off that she was unable to work, and I think Ms. Hoffman signed that. Dr. Harp explained that and testified that had she been able to achieve the accommodations that she was requesting, which was not only a 40-hour workweek, by the way. There were additional accommodations involved, such as regular breaks. She testified, but what about at the time that it was occurring? Was there ever any representation to the employer that she was able to work? I thought the representations at that time were that she was not able to work, and the employer kept asking for a release to come back to work before considering the accommodation, which I understand presents other issues, but as far as the underlying facts here, wasn't that same time Ms. Hoffman indicating that she could not work? Your Honor, I think we're mixing up a couple different occasions. What Ms. Hoffman was doing was saying, I want to come back to work, I want you to talk to me about the terms so I can get my doctor to release, and provide a release that will address the concerns I have, which are excessive workloads, which require excessive work time, plus regular breaks. She had low back, very serious low back problems. She had anxiety, depression. She had a number of things going on that required a more structured workplace. Didn't she apply for a long-term disability? She did not, actually. What they did was, at the end of the short-term disability, they automatically looked at it for long-term. It's just an automatic process. Ms. Hoffman did not, so to speak, apply for it, but it was applied for on her behalf, and therefore denied on her behalf. How do the 2008 amendments change our analysis here of your client's disability discrimination claim? What it does is, it changes the focus. It changes the focus from the broad population having to be disabled as compared to the broad population. It says, you don't look at disability. We reject the cases that were over-focused on simple aspects of disability. Instead, it said, you don't look at disability, you look at the actions that are going on. You still look at disability, but it's a second thought in some respects. If we were to agree that the district court put undue weight on the fact that Hoffman could work 40 hours a week, then do we presume her disabled and send it back for the district court to do the rest of the analysis, or do we send it back and ask the district court to reconsider whether she is disabled? Your Honor, this is on some different record. It's a matter of, are there material issues of fact for a jury to decide? This is not a matter of the court decided a case on a trial record and now sent it back to reconsideration. Well, but the district court just stopped just when she determined that the petitioner here, the plaintiff, could work 40 hours a week. Am I correct? That's the way I read the district court? That's pretty much. All right, so it didn't complete the analysis. So I'm just saying, if we do agree with you that these 2008 amendments are significant enough to change the focus and not preclude someone from being disabled who can work 40 hours, what do we do? Reverse the judgment and send it back to the trial court for further proceedings. Well, further proceedings on what? On the second step of the McConnell-Douglas analysis? The third step? Whether or not your client refused to engage in interactive proceedings? In other words, before you get in front of a jury, even if we agree with you, you'd have to jump through a bunch of hoops, wouldn't you? Well, I don't know what the district court would decide. I would presume that the defendant would say... Assume the district court decided that your client was disabled. There was factual evidence your client was disabled. We then get to whether or not there was a non-pretextual reason given by the employer for discharging them, correct? This is not a discharge case. It's a reasonable accommodation case. Reasonable accommodation case, right. So you just go right to reasonable accommodations? Right. Okay, so they say, gee, we kept telling her, as soon as you're ready to come back to work, give us—this is the second part of your argument, so let's segue into it. As soon as you're ready to come back to work, give us your doctor's note. We can't figure out what a reasonable accommodation is until we know what your limitations are. And she never does that. And then she goes out and finds another job. How can an interactive process work if your client refuses to give them that note? Exactly. She had provided a ream of medical records about— A lot of medical records, but they reasonably say, look, we don't want to be in the business of interpreting these records in the first instance. You've got a doctor. Have your doctor tell us what you can do when you're ready to come back to work. And at the point when her 26 weeks expires and they're entitled under their policies to fill this job because they want somebody in it, they say, we're going to advertise for this unless you can tell us you're ready to come back to work. And she never tells them. She never gives them a note. Why doesn't that—from their interactive obligations, why isn't that enough? Well, number one, she'd already given them the note that said 40 hours with reasonable breaks. Wasn't that much, much earlier? It was. That was before she went on short-term disability. Right. There. It was there. The second is— But she was getting paid for her job during that time period, right? That's fine. That's fine. You get to the end of it, she doesn't say, I'm still where I always was or always were. I'm seeing doctors. I've got all these medical records. And the employer says, okay, so what's your situation? Have your doctor tell us. And then we'll sit down with you and work it out. Can you see how subject to manipulation that is? They won't tell her what they're going to be able to do despite her multiple requests in using the language, I'm asking for reasonable accommodation, I want to talk about it, I want to discuss what might be possible so I can get this released from my doctor. And all they're saying is, nope, we're not going to talk to you at all until you already give us the conditions. And then, at that point, how easy is it to say, no, sorry, can't do it. And this is a chicken and egg. There is no case that says one comes before— There is a chicken and egg, and I guess the question is who's the chicken and who's the egg here. Well, sure. But they're saying, just tell us. Have a doctor tell us what you can do and can't do. You told us months ago you could work 40 hours subject to this and that. And we actually gave you the best accommodation in the world. We're paying you not to work. Well, that's not an accommodation. I know, but you're not complaining about the short-term disability. You're not giving them back. So we're now at the point where your client's 26 weeks run out. And they say, okay, what's your situation now? And it's radio silence from your end. That's my—respond to that. That's my difficulty. Sure. I think the law is pretty clear. It's been stated many, many times, including in our brief, and we cited that, that the obligation to engage in an interactive process is met once the individual says, I have a disability or I have an impairment that may result in disability. And I need some help in my job. At that point, the interactive process is required. The employer is required to engage in the interactive process. There's nothing in the standard here that says that they don't have to talk at all until there's a full release or a release with whatever conditions are on there. There's nothing in that standard that says that. Let me follow up. Do we have to know—I guess my question, especially in light of what Judge Hurwitz is asking, is do we have to know whether overtime is essential before we can look to the interactive process? The defendants did not make a case, did not argue, did not put on evidence in the summary judgment record that overtime was an essential function. They did not? They did not. So we have to assume that overtime was not an essential function? I believe that's the case, yes. So your client's inability to do overtime, therefore, would not be a disability? No, it would be a disability. She needs accommodation from the actual work. But if it's not an essential function of the job, she just doesn't do overtime. Do you say it's an essential function? Do I say it? No, I think it needs to be accommodated because it's not an essential function. That's the point, that it can be and needs to be accommodated because it's not an essential function of the job. If it were an essential function of the job and could not be accommodated, then she would have no claim. But if it's not an essential function of the job, why does she have to do it? Well, because they kept putting the workload on her. They made her a paralegal. That's what I can't find in this record, any evidence that anybody ever said, you must work overtime or we will terminate you or you won't have a job. They gave her overtime. She took it and then she said, you know, I'm having trouble doing the overtime. So they said, okay, we'll take you off claims where there's not as much overtime. For two weeks? For two weeks. And then she went on short-term disability. I think the sequence is not quite that close. She was asked to be taken off claims. She was taken off for a couple of weeks. It came back on later. Okay, but where's the evidence in the record that they forced her to do overtime? See, if it's not an essential function, I may be mixing labor terms, but if it's not an essential function of the job, then the employer doesn't need you to do it, right? Well, right, but they didn't put anything in the record to show that. And it's not a discrimination case. This is a reasonable accommodation case. I don't understand. An interactive process case. So you think it is an essential function or not an essential function? It's not an essential function of her position as defined in the 37 and a half hours. If she had been able to do the job in 37 and a half hours and they hadn't dumped the paralegal and trial counsel work on her, we wouldn't be here because they would have let her not do that work. Was that an issue that was raised in brief before the district court? The essential function was not that I recall. It was not an issue. I'll save my 30 seconds unless there's questions. Okay. Thank you. May it please the Court. Jim Barrett from Ogletree Deacons on behalf of Appellee Liberty Mutual. I think what I'd like to do, Your Honors, if I can, is just focus the Court on a particular point in time and it gets to some of your questions. Judge Hurwitz, and that point in time is April of 2016 when the relationship was broken. And that is the point in time when Ms. Hopman abandoned the relationship and no longer communicated or responded. Well, I know you want to get to the interactive process, but let's get there. Sure. Focus on the day before. Was she disabled the day before? She was disabled from the perspective of Liberty Mutual, absolutely. Okay. So if you think she was disabled, and she had called you on the 14th, so why does the district court find that she wasn't disabled? Well, the court had decided one of the multiple grounds was put forward. And this gets to the cognitive dissonance in the case. The day before that letter was sent in April, when she abandoned her job, from the perspective of Liberty Mutual, she was disabled. She was disabled to the point where she could not work. And if she was disabled to the point where she could not work, she's not a qualified individual. Look, she was disabled from the time you put her on short-term disability until the time she left the job, correct? Correct. But I want to make something... I'm just trying to figure out how this works here. You treated her as disabled. She sent you a note at some point in the fall that said, my doctor says I can work 40 hours with breaks, and you switched her around jobs, and then eventually you put her on short-term disability, correct? Correct. Once she went out, Your Honor... So she's disabled. Correct. Yes. If on April 14th she had called you back and said, I want to come back to work in my old job, what would you have done? What we did, what Liberty Mutual did was request the note to see if she could... Correct. I'm just saying, let's assume she did. If she called you back on April 14th and said, okay, my short-term disability leave is over, I can't get long-term disability, I want to come back to work, you have a requirement of engaging in an interactive process at that point, do you not? Correct. What would you have done? Ask for the note. And we did do that. I mean, that is the prerequisite for that conversation to happen. Because the employer is not going to take back somebody who's been out on leave at that point, six months, for her own serious health condition, without a doctor saying she can come back with or without accommodations. It needs that note. And it needs to understand what the limitations are. Is it that she can still only work 40 hours? Is it something more severe? Can she only work part-time? So do you agree that the fact that she could work 40 hours is not dispositive? It is dispositive if the court credits that as the only limitation in the record. And that's the issue that the district court decided. They said, well, I know she's saying she has these medical conditions, but the only limitation of those conditions that I see evidence of the record, and the only limitation that she was advocating below and in her complaint, was that she had an inability to work overtime. Now, in fact, as your honors are understanding, there was a period of time where she was representing that she could not work at all. And from the perspective of the company, it wasn't about the 40 hours. It was about, can you come back and work for us safely, if at all? And on what basis? And that's why I do want to talk about the April date. It's April 28th. And I know you do. But I guess I want to know what your position is regarding the amendments to the ADA. Sure. And whether or not you agree or disagree that they've lowered the burden necessary to show a disability under the ADA. They absolutely have lowered the burden, and that's what this court held in weaving. And that is the case that's cited in our briefs. That's the leading case on what constitutes a substantial limitation. And so, do you agree that a person who's capable of working a 40-hour work week is not per se precluded from alleging disability? Your honor... That statement, do you agree? I agree. I agree that this court has, in weaving, and in the regulations itself have made clear that this is an individualized inquiry. And the standard itself has changed because of the amendments. It's whether or not the individual is limited in ability to work compared to, quote, most people in a general population. I'm just questioning what happened here, because it looks like the district court decision was a per se sort of decision that someone who works 40 hours a week can't be disabled. I disagree. Okay, so tell me. I want to know why. Why did the district court find this individual not disabled? So, the district court found this individual disabled. It did undertake the individualized inquiry and looked at the evidence in the record as to what this person's individual disability was. And it cited the facts, undisputed, that she was able to be gainfully employed successfully at Philadelphia Insurance doing the same thing that she was doing for Liberty Mutual. I know that the appellant says it wasn't exactly the same thing. The complaints were less complex. Does it make a difference that it was April to November? In what sense? When did she go to work for the next insurance company? January. January, I'm sorry. And she left your employment in April? The previous April. So, does it make a difference that it was nine months later? Eight months later? No, Your Honor. Was there a burden on some side to show that she recovered or didn't recover during that time period? I don't think that time frame is relevant to the analysis. And to get to your question about the district court, it looked at the facts because it had the standard. It is a lower standard than it used to be after the amendments. The standard is, is she limited in her ability to work as compared to most people in the general population. The appellant put in no evidence in the record that she met that or failed to meet that standard. Doesn't her placement on short-term disability provide at least some evidence that she falls in that category? There is no evidence in the record that Ms. Hoffman was involuntary placed on short-term or long-term. Even voluntarily. She's on short-term disability. There is evidence in the record. Here's the cognitive dissonance. Again, when she went out on leave, and it was her doctor who placed her on leave, it was to work zero hours. Now we're not talking about 40 hours. It's zero hours. And so what the district court's ruling was essentially, look, and the way the district court looked at it, it's like, well, I'm not going to look at this interactive process issue. But let's just assume, because it's the only evidence in the record and it's what Ms. Hoffman is advocating, that she could work 40 hours a week. In the circumstances of this case, that's not a substantial limitation because we have all this evidence of her ability to do the job at Philadelphia today. There is some cognitive dissonance in this case. There is. You're here, and the district court concluded that a person who was on short-term disability on the day that her, or the day before her appointment was terminated, was not disabled. So, to be clear... That's what the district court concluded. Correct. So hypothetically, if we're to take her at her word, that during this period of time when she was telling the company she could not come back to work and she had no release-to-work date, if in fact that whole time that she could work 40 hours a week, then she wasn't disabled. She can't have it both ways. That's the point we're making in the brief. I guess my concern is neither can you. You can't have her... The district court's sole basis for rejecting this claim was that she found that there wasn't sufficient evidence to find that Ms. Hoffman was disabled. And I'm saying, isn't the fact that she was placed on short-term disability some evidence she was disabled? But that gets to the second argument, if I may, Your Honour. And that's independent of the second argument. But no, independently, but to be clear, she's advocating that she could work 40 hours that whole time. And that's just not what she was telling everybody else, including the employer. Again... I take that as true. So therefore, I start from some skepticism about the first part of the district court's ruling that she wasn't disabled. Now let's get... So let's assume she was disabled. What are your obligations on the 14th of April? Sure. So to focus specifically on this April 28 date, that's the date of the letter. The letter that goes out to Ms. Hoffman that says, please notify us when you are able to return to work. As of that date, there are some undisputed facts. If you'll allow me, I'll just quickly summarize what's undisputed in the record. So first, she had been off work six months because her own doctor took her off work. She had to cooperate to get the short-term and long-term disability. Those were applications she submitted and documents she submitted. That's fact number one. The note that took her off work is SCR 79. It's also, second, undisputed that during that entire period, the only communication that she had with her manager at Liberty Mutual was that her doctor had not released her to work at all, zero hours. She did that at least four times, and that's in the record at SCR 129 through 132. The third undisputed fact is that when she affirmatively filled out a form to get long-term disability benefits, she stated that she could not engage in any gainful employment. That's at SCR 139. That's in March, one month before the letter goes out to her, just asks her for information. Then, the fourth undisputed fact, two days before that letter, she talks to Allison Jay, who was assigned to work with her in this interactive process, and it is undisputed that Allison Jay told her, you need to get us a release to work that shows us what your limitations are so that we can review them and determine what accommodations are possible. That's at ER 106. And her response is also in the same point in the record. She told Jay that she was not released to work. That was two days before the letter on April 28. This is the final communication. And there's an email exchange that happens the same day. Ms. Hopman emails Ms. Jay and says, I'm checking in on the ADA accommodation. She says, quote, if there is something additional you need, please let me know. To which Ms. Jay responds, you stated your doctor has not released you. And I don't think we're at the point of reviewing that unless he has, in fact, released you. And that's at SER 117. And the letter is at 118. All of this is undisputed. But why should we get to this accommodation problem when the district court didn't get to the accommodation problem? Well, you wouldn't, you don't have to because you can affirm the district court on its finding that if in fact, notwithstanding everything I just recited I just, when you say on its finding, I'm just, I have some pause and some concern that somehow this can be misinterpreted that we're saying that the amendments don't mean anything. And that it's, you know, someone who works a 40-hour week, you can't be disabled. So I'm having a little bit of trouble because it looks like that was the emphasis that the district court took. And the 2000 amendment, the eight amendments are telling us differently and you basically agreed to that. I'd say two things. The first is that you do not have to make that ruling. What the district court did is tied its ruling to the facts. And the second thing is the court... Well, the facts here is that she worked a 40-hour week. I mean, looking at the district court's order, I don't know if you have it in front of you, it says, although plaintiff, and I'm looking at page 16 of the order, I don't know, ER 17. Although plaintiff may have some disabilities, the record on this motion does not reflect any such disability substantial limit or daily activities to the extent that she cannot work a 40-hour week. And it made that ruling based on undisputed facts with respect to her activities at Philadelphia. And can I say one more point? Because I got one minute, and that is that the court does not have to affirm on the ground the district court did. The court can affirm on this interactive process because all they knew was that she was saying, I'm not released to work, and wouldn't give them a note. The chicken and egg problem, that is actually, in the law and in the regulations, it is the employee who has to provide the note. And 29 CFR 1630.14 gives the employer the right to make the inquiry. The EEOC enforcement guidance says, when the disability or the need for accommodation is not obvious, and that's what we had here, the employer may ask the individual for reasonable documentation about his or her disability and the functional limitations. And then finally, this Court's decisions, and Hyte, Allen, and Markowitz all state that when the employee does not do that, the interactive process breaks down, and it's the plaintiff's fault. And the last point that I'd like to make... Before you get to your last point, this was fully briefed about, was it not? Excuse me, yes, Your Honor. As an alternate ground for summary judgment, the district court just didn't reach it. Yes, Your Honor, and my time's running. Can I make one closing statement? The purpose of the amendments was to take the emphasis off whether or not a disability existed and put it more on, was the employer meeting its obligations and having the conversations it was supposed to be having and not discriminating? And I submit to this Court that that conversation was happening and that it was Ms. Hoffman who abandoned it. Thank you. Thank you. Number one, the weaving case. I'll give you one minute. I think you were over time, so I'll give you one minute. Thank you. The weaving case that's referred to, that was about the major life activity of working. We did not allege major life activity of working. That makes a huge difference. If your major life activity alleged is working, then maybe 40 hours is an issue. That's not what we said. This is a summary judgment case. The briefing by Liberty Mutual is a jury argument. Much of what was said here today was a jury argument. Rolands, the quote in page 40 of plaintiff's brief. Additionally, Rolands informing Liske of her limitations and needed accommodations was sufficient to put UPS on notice that it was expected to engage in an interactive process. UPS was not entitled under such circumstances to simply ignore Rolands' requests, regardless of whether she had been cleared to work without restrictions. That's what Liberty did here. They ignored multiple explicit requests to engage in an interactive process to talk about accommodation. Philadelphia would say that the relevance of Philadelphia employment is nonexistence because it's a very different job explained in the briefing. Nine months plus six months later from when she left the job. Thank you. Thank you. The case of Valerie Hoffman versus Liberty Mutual Insurance Company is now submitted. I want to thank you both for your oral argument presentations here today.
judges: Murguia, Hurwitz, Zipps